Good morning. Good morning, Your Honors. I'm Richard Edelman, Counsel for the Brd of Maintenance of Way Employees Division. I'd like to request to reserve three minutes of my time for rebuttal. Keep an eye there. I'll help you. Thank you, Your Honor. And I'll try and avoid egg analogies. Okay. All right. If a rail carrier suppresses the filing of grievances over contract interpretation issues by disciplining employees for using the grievance process, that undermines the Railway Labor Act in the same manner as union threats of strikes over contract interpretation issues. Wouldn't that be something that could be raised in arbitration? They say, oh, we fired you because you were rude to your coworker, and he says, no, you fired me as a pretext for retaliation for my grievances. That would be the sort of thing that an arbitrator would deal with. We would think no, Your Honor, because arbitrators, as I pointed out in my brief, are required to make their awards drawing the essence from the collective bargaining agreement. Arbitrators don't have jurisdiction to apply the law. The arbitrators can't say, for example, if the arbitrator- Apply the fact, and they would say, was it because he was rude? Is that a fact? Or was it because he filed grievances and they didn't like that? Was that a fact?  No, they- Yes, I would agree- They didn't fire him because he was rude. The arbitrator could do that based on a fact finding. The arbitrator is not required to do that as a matter of law or say that is illegal under the Railway Labor Act. And more to the point, we are not, the union is not required to submit a statutory claim to arbitration just because the arbitrator might say, on the matter of facts, I don't believe that there was proof of harassment or uncivil behavior. Counsel, what troubles me about your case here, it seems to me that making the argument that what was done was intended to be retaliatory would take every minor under the statute, every minor claim, and make it into a major claim. No, I don't think so, Your Honor, because there is the major-minor dispute test. And the major-minor dispute test requires that the carrier, it has a burden, albeit small, of producing evidence that they have an arguable basis and a sincere basis for asserting the contractual defense. And they, of course, claim that the dialogue between Sahlstrom and Tyndall was that. Yes, they do, but they had no evidence of that in court. They had no competent evidence to support that allegation. I'm not saying that they had no competent evidence that there was harassment of Sahlstrom. The only evidence that happened about the conversation on April 7th that was before the court as competent evidence was the testimony of Mr. Tyndall that the conversation was brief, it was civil, and they walked away and said, fine, we'll get you the information. There was no testimony from Mr. Sahlstrom in the court. The only testimony about that was from a supervisor who reported what was said in a transcript of a company investigation that he did not attend. So you're saying that the claim that Sahlstrom made that Tyndall was harassing him to get information about overtime that he had is not competent evidence? That's correct, Your Honor, because the Norris LaGuardia Act requires that in a labor injunction dispute there must be testimony in open court under oath subject to cross-examination. The injunction is moot at this point. It was a preliminary injunction. The case has now been decided in full, so the issue at this point is the judgment, not the preliminary injunction. But we are permanently enjoined from striking over this, and the Norris LaGuardia Act extends to injunctions generally. So how do we deal with this? As my colleague has pointed out, the Norris LaGuardia Act applies here primarily whether it's an injunction or not an injunction. Now we're basically out of injunction bill. We're basically under the Railway Labor Act and trying to construe how the Conrail test applies. No, I don't think so. We are enjoined from striking over this dispute. Right. So we are still under the Norris LaGuardia Act. The way the Railway Labor Act comes into it is we asserted a statutory claim. We said they're violating the Railway Labor Act by retaliating against Mr. Kindle for filing grievances. They said, no, it was really about uncivil behavior, and so that makes it a minor dispute. If they prevailed in their case, if they made their case under Conrail that they had an arguable and sincere basis to do it, then a strike is an unlawful act and may be enjoined under the Railway Act. You're saying they did not comply with Conrail. That's correct. And the district court did not comply with Conrail because he misstated the two things. He misstated the Conrail test, which requires that the company say that what they're doing, show that it is arguable under the terms of the agreement and sincere. Okay. Now, first of all, arguable under the terms of the agreement means you have to look to the agreement, something under the agreement, and not just whether or not it's reasonable for the company to have a rule against harassment. And second, the reason he found it was he said Sahlstrom testified that he felt harassed. But Sahlstrom was not in court. So here's the objection. Well, there's both. But you sued them under the Railway Act for retaliation. You, meanwhile, had threatened a strike. Correct. And they then, in your lawsuit, moved for the remedy of a preliminary injunction to preliminarily enjoin you from striking over your claim. And we are enjoined permanently from striking over that. I find that. We're enjoined because the court converted it to a permanent order. Where? In his final order, converted. His final order says you lose your cause of action against them. But I'm not sure, did they counterclaim against you for a permanent injunction? They did not. It was just a pretrial remedy. It wasn't a cause of action. Well, I can't, if we were to say we're going to strike now if you do this, they would cite this injunction as barring us. So how does the final, as you can appreciate, we all were told after the briefs had been filed and so on that you all had stipulated to making this a final judgment, which kind of originally this came up based on the injunctive aspects of it. Yes. Whereas now we're dealing with the underlying predicate for having sought the injunction in the first place. If I may, the basis for the injunction is the court's finding that this is a minor dispute. Right. Okay. So this can't be a minor. So the two pieces come together. And one is in particular, again, his finding of a minor dispute is based on evidence that is not in the, that is not legitimately in the record, both under Norris LaGuardia and under hearsay rules. You're saying that the fact that the district court's final order, which found this was a minor dispute should be reversed because there was not competent evidence under the Norris LaGuardia Act or under the Conrail test to show there was in fact a minor dispute. Yes. Because under the Conrail test, it's their burden to show it and to get to your Honor's concern. We're not saying that the level of proof they would need to produce to the district court would be enough to persuade it on the merits if it had the decision on the merits, but they need to produce enough to clear the threshold of the Conrail test. But how, how do we, you talk about the merits. I thought that your final judgment in fact was a, in effect a decision on the merits because you wouldn't have the injunction unless there'd been a determination that there was a minor dispute. Right. In this sense, I mean the merits of the question of whether or not Mr. This goes to your Honor's question about this could subvert the whole arbitration process. The merits of whether Mr. Sahlstrom was or was not harassed. That's that point. The point the district court raised, the point that BNSF argued was that if all we have to do is show we have a good faith basis for disciplining him and then it goes off to an arbitrator. If they had produced Mr. Sahlstrom, if they had produced Mr. Barrera, if they produced somebody who was competent and that person testified, Mr. Sahlstrom testified under oath and subject to cross-examination, yes, I felt harassed and the court believed it was enough, even if not enough to persuade him he was ultimately right that he was in fact harassed, well at least there then would be evidence to support the company's burden of proof of showing that they have at least an arguable claim. Do you agree, and again I have to look more carefully at what you all ultimately agreed upon I guess, do you agree that the only way that a permanent injunction could have been properly entered against the union was for the district court to have found this was a minor dispute under the Railway Labor Act? Yes, the court would have had to have found a minor dispute. And if I understand you correctly, you're saying that the Norris LaGuardia Act and the Conrail Test required that Mr. Sahlstrom personally testify and be subject to cross-examination in order for the district court to have properly found that. Is that right? If somebody who was competent to speak to the point relied on by the court in this instance, yes. You're saying simply there was no evidence before the district court that would have permitted it to make a determination that this was a minor dispute. That's correct, Your Honor, because Mr. Sahlstrom, the court specifically made in its findings that there was a recent basis for saying that he was harassed because Mr. Sahlstrom testified that he was harassed. But Mr. Sahlstrom said that in a company run investigation he wasn't in court. And not only that, nobody who was even in court was at the inn. Now that there's been a final judgment entered, do we then review the district court's factual findings for clear error? I think you view because the district court error was based on both misconstruction of the Conrail Test and failure to follow the Norris LaGuardia Act and misapplication of the hearsay rules, this is de novo review because all of those errors flowed from the legal errors. Well, to the extent there's legal errors, we view that de novo. But to the extent that the court made factual findings or adopted factual findings, we review that for clear error, correct? I don't think so, Your Honor. I think because the factual findings were based upon legal error. But, again, I think what we're all struggling with is you've converted this from an We have a very different situation when you have a final judgment in the district court where the injunction is not really stripped away because it's final. But on the other hand, the predicate finding gets to what my colleague was talking about. You're asking us, I gather, to go back and review what the district court concluded. The district court clearly thought there was enough evidence to enter a determination, to make a finding that this was a minor dispute. How else can we determine whether this was accurate other than going back and reviewing the district court record? I think, yes, you do have to look at the district court record. But my point is that the error made by the district court, this predicate, I mean, look, we specifically raised the North LaGuardia Act in our brief in when the court asked for statements about which witnesses you wanted to call and how that was going to be conducted. I asked to make an opening statement. I asked to cross-examine their witness. And the judge said he thought the declarations were full of hearsay and then wouldn't let me cross-examine the witness on the hearsay statements. Let's just say that it's all hearsay. You know very well as an experienced trial lawyer, and we know that there's hearsay and there's hearsay. Sometimes people object. Sometimes people don't object. There are exceptions to hearsay. And ultimately the district judge relied on hearsay. But the district judge went ahead, made the conclusion, are you saying that we reverse what the district court did because the district court relied on hearsay evidence? On both the North LaGuardia and the hearsay. The hearsay was for the truth of the matter asserted. The judge said that Mr. Sahlstrom testified that he felt harassed. That was used for the truth of the matter asserted and relied on in the court's decision. But, again, the North LaGuardia Act problem, this is a labor dispute. And in a labor dispute, you have testimony by witnesses on personal knowledge in open court subject to cross-examination. It's still not clear to me that there is a permanent injunction. What do you rely on to say there is one? It seems to me you sued for a cause of action that you had. They asked for an interim remedy, and they got it. Then you lost your cause of action. But no one filed a cause of action that would justify a permanent injunction, and I'm not sure there is one. I admit that you shouldn't strike now. I mean, it's probably res judicata or collateral estoppel or something, and at least bad judgment if you now decided to strike. But I don't think there is technically a judgment imposing a permanent injunction in this case because nobody ever sought one, unless you have seen something that I haven't seen. Now, where is it in the record? I'll have to look. It's your stipulation. There's his order on your stipulation, which is about six words long, and I can't find it, but I don't think it said anything about a permanent injunction. Well, he converted the decision into the permanent judgment. The decision is an injunction. He converted it into a judgment on your claim against them, i.e., you lost it, but he didn't convert it to a permanent injunction that no one had asked for. Surely you didn't ask for it. I don't think they asked for it. We can ask him. But anyway, I don't want to take up all your time. Actually, I'm struggling with the same thing. I have a document, docket number 7-6, that says order regarding entry of final judgment, but nothing that references a permanent injunction. So if I'm missing a filing from the docket, maybe when you stand up on the panel. I don't think you are. I think that his order applied the decision that he made and converted it, and you basically say, are either of you going to have – sorry, I'm past my time. Do you have anything else you want to say? Otherwise, I'm just going to convert this to an entry of judgment. Judgment, not permanent judgment. Permanent injunction. Judgment. Judgment on what? On the cause of action before it, which was what? Your cause of action. All right. Let's hear it from the railroad. Good morning. David Pryor on behalf of BNSF Railway. With respect to your question about whether there's a permanent injunction, I don't believe that there is. I think, as you've described, this is exactly how it happened. We were awarded a preliminary injunction, and then we stipulated to the record, we stipulated that there was no need for further discovery, that the record that was produced at the hearing would be the record for the merits. And then there was a finding by the court of two things, that it was a minor dispute and also that there was no violation of the Railway Labor Act. There was no Section 3 violation by the railroad, and that was it. So what was – what do you say to the hearsay objection on the preliminary injunction under the Norris-LaGuardia Act? Well, again, as we cited in the cases in the footnote, we don't – footnote 11, I believe, in our brief. We weren't using the statements for the truth of the matter asserted. What we were showing was that there was adequate evidence to support the discipline. It's just like in the Jones case we cite and the Saudi Arabia case. You know, in those cases, in Jones, for example, the plaintiff said, well, wait a minute, these memos of my misconduct are hearsay. And what the court said was, wait, they're just showing that the employer relied on the memos. Here, both Mr. Heenan – There's something different about the Norris-LaGuardia Act that says an employer in this context can't just rely on what another employer would find reasonable to rely on but must, in fact, have cross-examined testimony in open court in order to – No, Your Honor. That seems to be the argument. Well, no, I just don't think that's right, Your Honor. I think that the Norris-LaGuardia Act has protections about live testimony, but the live testimony was to just show that our investigation record, the record that was made on property, was sufficient or at least provided an arguable basis under Conrail to support the discipline. And so the live testimony that we brought was to show, yes, this is what the carrier relied on. The railroad relied on the investigation transcript. Both Mr. Heenan testified to that and Mr. Capps testified to that in the hearing before Judge Anderson. They said, this is what we relied on. We concede they did not have personal knowledge of any altercation between Mr. Tindall and Mr. Stahlstrom. Just like in the Jones case, the memos, the person who discharged Mrs. Jones didn't have any personal knowledge of her early misconduct. They just relied on the memos that were in her file that showed misconduct. This happens in employment cases all the time. Does the fact that now there's been a permanent judgment moot the arguments with regard to the Norris-LaGuardia Act? I think they do. I think at this point they're mooted. As a point of reference, however, you know, there's a case in the 11th Circuit, and we didn't cite it in the brief. It's Delta v. APA, 238, F3rd, 1300. And what it said is the purpose of Section 107 is not so much about requiring live testimony as it is about ensuring the presence of reliable evidence. And what the court said there was, look, if the facts aren't in dispute, if there's no dispute about the material facts, then there's no need for even live testimony. In that case, the district court didn't provide an injunction. The 11th Circuit ordered the court to put a permanent injunction in place and did so based solely on declarations. What's the site on that Delta case again? It's 238, F3rd, 1300. It's an 11th Circuit case. 11th Circuit. What year? I think it's 2001. Okay, thank you. So counsel's brief, apropos of this hearsay objection and going beyond it, what the district court did, which is not uncommon in a bench matter, is to say let's have your direct testimony by declaration, and then in order to allow confrontation, those declarants have to be available for cross-examination and you get to cross-examine them if you have anything to ask them. So that's generally what he said he was going to do and did. The union says that instead what he did was allow the declarations, point out that some of the declarations were not based on personal knowledge, but then not allow cross-examination on the things that weren't based on personal knowledge that weren't cross-examined. Did that happen? No, I don't think that, well. He looked at the sites that were provided to show that that happened. I didn't have time to ask the other side that, but if you can tell me. He'll get a chance. Yeah, but tell me looking at the sites that were provided to say that that happened, did that happen? I would concede that there were times where Mr. Edelman tried to ask questions and the judge said, I don't believe that question is relevant. However, at the very end of the hearing, Mr. Edelman tried to make a series of objections, including trying to make a closing statement about North LaGuardia, and he suggested very strongly that he wanted to provide, he wanted cross-examination. Judge Anderson said, well, the witnesses are all probably still here. If you want to cross-examine them, we'll bring them back in. Right, I read that, but it seemed to be an allegation that prior to that there had been a sort of rule of thumb set out that certain parts of the declaration couldn't be cross-examined, but yet they would be considered. Now you say the judge sustained relevancy objections, and that is neither here nor there. Did the judge sustain objections saying that part of the declaration isn't based on personal knowledge, so therefore you can't cross-examine about it? No, I don't think the judge sustained any hearsay objections. I don't think any were made or sustained, number one. And number two, I think it's footnote five in the judge's opinion. He specifically said, for example, Mr. Sahlstrom, he was not relying on the truth of the matter asserted. He states that in his original order. He says I'm just basically relying on the evidence in the record that an employer would rely on, that an investigation was made. I mean, hearsay, if we were to adopt the union's position here, it would override the collective bargaining agreement's provisions, which don't prevent hearsay. I mean, the Norfolk Southern case that's cited on page 32 of our brief, that district judge went through, you know, very, very detailed analysis saying that, look, in railway labor collective bargaining situations, employers put on hearsay evidence. Discipline happens in the context of hearsay evidence. It happens all the time. It's okay. If we were to force those witnesses then to sustain a discipline, it's okay to sustain the discipline. That's what a Railway Labor Act arbitrator would say. He would say, oh, yeah, hearsay is okay. But now in any situation where the union doesn't like the result, they can claim a major dispute and force us to put all those witnesses on it live at a preliminary injunction hearing. That would subvert the standards and protections in the CBA itself. And with respect to your earlier question, Judge Welkin, about whether the CBA would allow for somebody to dispute their discipline, as this case is cast, the answer is unequivocally yes. The unjust treatment rules that are present in this collective bargaining agreement would clearly allow someone to say, well, wait a minute, I'm not saying it's about the harassment, the alleged harassment, but this is really about something else. This is about treating me unfairly. And what's really interesting about this case is not only is the unjust treatment rule extraordinarily broad, but General Chairman Marquardt testified, and this is on the court reporter's transcript page 30 and 31, he testified that the unjust treatment rule on this contract makes it no longer about the merits, that if an employee wants to stand up and say, look, it doesn't matter whether I scratched the airplane like in Phenasy or whether I harassed a co-worker, it's about something else. I'm just being treated unfairly. He confirmed that under this contract the union's position is they could file that claim. And what he also testified to and admitted to is they didn't file that claim. He could have cast it exactly that way and said, look, put the merits aside, RLA arbitrator, this is about me just being treated unfairly and the railroad bullying me for some reason, whether it's because I filed overtime claims or some other reason. And General Chairman Marquardt conceded that in cross-examination. So he could have very well brought this case exactly that way. With respect to the way this case stands, this is just yet another attempt, and we cite the cases on pages 24 through 26 of our brief where the unions are trying to extend the Railway Labor Act beyond the major-minor framework and try to latch on to statutory causes of action because they know the major- minor framework so favors the railroads. We cite the Horizon Airlines case. In that case, the Alaska Airlines case is another one. Then we cite a Seventh Circuit case, a Fifth Circuit case, and an Eleventh Circuit case. Two of those cases are maintenance-of-way cases, and two of those cases Mr. Edelman was involved in. This is just one more attempt for the union to say it's not really about major-minor, it's about something else. With respect to the framework, and we've covered North Dakota, I just want to make one more point. If the court were to accept the incorrect framework, they would say, you know what, Section 3 cause of action is actually plausible. It could actually happen, notwithstanding the framework of Horizon Airlines which says, look, you know, in post-certification situations, we don't really look at these types of cause of action. Moreover, we only care about cause of action that strike a fundamental blow to the collective bargaining process. Suppose we got past all that and said, you know what, it's a colorable cause of action. Here the facts squarely favor the railroad in terms of whether or not there's been any kind of undermining of the union's position. How do we know that? Neither General Chairman Marquardt nor local Chairman Poston could identify any overtime claims that were not filed as a result of the railroad's supposed actions, and that's on supplemental record page 6 and page 10. Mr. Tyndall was questioned by the court. Judge Anderson said, in 2015, how many overtime claims did you file? And that's on transcript page 66. Mr. Tyndall said, oh, I filed between 25 and 40. So then Mr. Edelman came back on redirect and he said, well, how many of those were filed before you got your notice of discipline, trying to suggest that all these claims must have been filed before the first notice of discipline came in, and then they tailed off. What Mr. Tyndall said was, before the notice of discipline came in in 2015, he'd filed four or five claims, which means he filed 80 percent of his overtime claims after the notice of discipline started. So any notice of discipline here, clearly on the record, did not cause his overtime claims to tail off. And then finally, the only other piece of evidence which is in the record is Mr. Kapp says on his division there's been no decrease in overtime claims in 2015. So the union could have easily put on a witness that said, well, we've seen something very different in this division. On Mr. Kapp's division, we've seen a huge tail off in overtime claims in 2015 since April of 2015 when the notice went out. They didn't put that evidence on. So even if we were to accept the incorrect legal framework, the evidence in the record is there's been no animus or intimidation or decline in the filing of overtime claims. If there's nothing else, I'll sit down. You didn't file a counterclaim of any kind? We did not, Your Honor. We did not file a counterclaim for a permanent injunction. So when the judge asked us to stipulate at the conference, we agreed to it, and we did not at that time ask for a permanent injunction. I assume that Mr. Edelman would tell you that if the case has been adjudicated in a minor dispute that Main and Subway would not strike over what is a minor dispute. I mean, presumptively, when they sent us the letter on July 17th, it was because they believed that they had either a statutory violation or a major dispute. Judge Anderson's final order says no violation of the Railway Labor Act, and it's a minor dispute. So presumably there's no basis for the union to strike at this point. But you don't construe the final judgment as a permanent injunction because it referenced the findings made during the preliminary injunction. I do not, Your Honor. Anything else? Thank you very much. How much time do we have for counsel? We'll give you a minute and a half, okay? Thank you, Your Honor. A couple of things quick. First of all, I don't think that the ability to enforce the Railway Labor Act ought to depend on the resilience of the employee resisting pressure. With regard to the question about the exchange about hearsay, the judge and this one of these is page 9 of the hearing transcript. The witness got up, started talking about what was said between Mr. Soster and Mr. Tyndall and how he felt, and I cross-examined. You weren't there. Who was the witness? The witness was Mr. Heenan. And I said, you weren't there for that. That's right. And then I proceeded to follow up, and the judge said, look, that's hearsay. It's just rank hearsay. Like I said before, a lot of these are objectionable because they're just full of hearsay. And then precluded me from asking any more questions about that. So we have the declaration goes in, in full, per the judge's order, and then I'm barred from cross-examining. What were you trying to cross-examine about? To demonstrate that there was no knowledge, there was no evidence, and Mr. Solstrom wasn't there. The other point about the Norris LaGuardia. Mr. Heenan wasn't there. Mr. Heenan was not there. I'm sorry. So you were trying to sort of impeach him. Yes. To point out that he wasn't there. And, again, that the railroad had no evidence. The other point about Norris LaGuardia, who else do you want to examine? It's not the reason I said there's nobody else. The question was not do I want to call Mr. Heenan and Mr. Capps up again. To cross-examine them again, the point was that the key witness, Mr. Solstrom or Mr. Barrera, the other person, were not brought there by BNSF. So, you know, the judge said you can call them. I couldn't. Finally, section. You could have called them. You didn't. Well, it was their burden to produce them. I get this. I'm saying the judge gave you the opportunity. You could have said, you know, circumstances, I need some more time. I want to call them. Well, I mean, the judge said, which one of these people I can call anybody who's out there back. It wasn't that I was going to bring in somebody who wasn't there. Okay. Were they still out there? Those two people, but not the people whose evidence was being relied on improperly. That was my point. I realize I've run through my time. Very good. Any other questions? No. Thank you both. Thank you. We appreciate your arguments very much. The case just argued is submitted, and the court stands in recess for the day. I just say this is a beautiful courthouse. Thank you very much. It's a pleasure to be in this courthouse. We're delighted to have you here. Thank you both. All rise.
judges: M. Smith, Nguyen, Wilken